KOHLER, APPELLANT, v. ICHLER ET AL., APPELLEES.*

(No. 469—Decided April 21, 1961.)

---

*Motion to certify the record overruled (37224), November 15, 1961.

*Messrs. Kaylor & McKinley*, for appellant.

*Mr. A. F. Brindley, Jr.*, and *Mr. Carlos A. Faulkner*, for appellees.

GUERNSEY, J. This is an appeal on questions of law and fact from a judgment of the Common Pleas Court in an action to quiet title. Although assignments of error were filed, the appeal was otherwise perfected as an appeal on questions of law and fact and was heard *de novo* by this court on the facts admitted in the pleadings and the stipulations of fact made in the original trial of the cause.

The trial court having struck from the petition all that portion of the eighth paragraph thereof including and following the words "and that she had an extreme antipathy and animosity and dislike for plaintiff," and no amendment being ordered by this court, the trial *de novo* is on the same pleadings as below and excluding the allegations thus stricken. 3 Ohio Jurisprudence (2d), 662, Appellate Review, Section 712.

The following pertinent facts were admitted in the pleadings or stipulated:

1. Minnie Kohler died testate on July 18, 1952, having never had issue, leaving surviving her on said date her only adopted child, Ray Kohler, one brother, Warren Ichler, a defendant herein, and one sister, Ruah Stevenson, a defendant herein.

2. Ray Kohler died testate on February 6, 1959, having never had issue and leaving surviving him his widow, Frances M. Kohler, plaintiff herein, who also was his sole heir at law and sole beneficiary under his will, and who had married him on June 26, 1929.

3. Mae Ichler, another sister of Minnie Kohler, died in 1949, having never had issue.

4. Defendant Alfred F. Brindley, executor of the estate of Minnie Kohler, has been in posssession of all the real estate herein involved since his appointment. The will of Minnie Kohler was not offered in evidence in this action.

5. By a series of five deeds executed and delivered to Ray Kohler over a period of time from May 31, 1940, to June 25, 1947, Minnie Kohler conveyed the properties therein described. The granting clause of the first deed contained the provision:

"Ray W. Kohler for life, and then to the heirs of his body,

*and if he die without heirs of his body,* the remainder to revert to the grantor, if living, and if not living, then remainder to grantor's heirs at law." (Emphasis added.)

The habendum clause of the first deed contained the provision:

"To have and to hold said premises, with all the appurtenances thereunto belonging, to the said Ray W. Kohler for life, and then to the heirs of his body, *and if he die without heirs of his body,* the remainder to revert to grantor, if living, and if not living, then remainder to grantor's heirs at law." (Emphasis added.)

The provisions of the granting and habendum clauses in the third deed were essentially the same as the foregoing. The provisions of the granting and habendum clauses in the second, fourth and fifth deeds materially differed from those hereinbefore quoted only in omitting the emphasized phrase of each of said clauses.

As by the facts admitted or stipulated plaintiff is not herself an heir of Minnie Kohler she may succeed in her action to have her title quieted to the premises conveyed by the five deeds only as the sole heir of Ray Kohler or as sole beneficiary under his will. She had to establish by a preponderance of the evidence that upon the death of Ray Kohler he had an absolute estate in fee simple in said premises which could pass to her as his heir or which could pass to her under the provisions of his will.

The parties have ignored the slight differences in the granting and habendum clauses of the various deeds, and since, as will hereinafter appear, the additional phrase contained in the first and third deeds for the purposes of this action adds nothing to the legal effect of the granting and habendum clauses, we will likewise treat the deeds as being identical in their phraseology and consider them as if they all read:

"To B for life, and then to the heirs of B's body, and if B dies without heirs of his body, the remainder to revert to A (the grantor) if living, and if not living, then remainder to A's heirs at law."

At common law the words, "to B for life, and then to the heirs of B's body," would ordinarily create a fee tail estate. However, in Ohio, the statute which abolishes the application of the rule in Shelley's case and the statute against perpetuities,

Sections 2107.49 and 2131.08, respectively, of the Revised Code, read in pertinent part as follows:

"When lands, tenements, or hereditaments are given by deed or will to a person for his life, and after his death to his heirs in fee, the conveyance shall vest an estate for life only in such first taker and a remainder in fee simple in his heirs. *If the remainder is given to the heirs of the body of the life tenant, the conveyance shall vest an estate for life only in such first taker and a remainder in fee simple in the heirs of his body.* The rule in Shelley's case is abolished by this section and shall not be given effect." (Emphasis added.)

"* * * All estates given in tail, by deed or will, in lands or tenements lying within this state, shall be and remain an absolute estate in fee simple to the issue of the first donee in tail."

The former of these sections has existed in its present form since 1941, and the latter of these sections since 1931. The effect of either, as applied to the operative words of these conveyances, and without considering any reversion, was to initially limit Ray Kohler's estate in the various premises to a life estate and to prevent same from being enlarged to an absolute estate in fee simple during his lifetime. His widow would, of course, receive nothing from him by virtue of this life estate for the life estate would terminate upon his death. And as he never had had any heirs of his body there is no question that the remainder to the heirs of his body, created by the application of these statutes, upon the respective conveyances, if not alone by the words thereof, also failed.

In the case of *Evangelical Lutheran St. Pauls Congregational Unaltered Augsbierian Confession* v. *Sheffield*, 90 Ohio St., 467, without reference to any statute abolishing the rule in Shelley's case and without reference to any statute against perpetuities, the Supreme Court held that upon the death of the donee of an estate tail without children the real estate would revert to the heirs at law of the donor of the estate tail. In the case of *Bunnell* v. *Evans*, 26 Ohio St., 409, the Supreme Court held that:

"Where a testator made a devise to his son John 'through his natural life and then to his heirs,' and in another part of the will used the word 'heirs' in the sense of 'children'—*Held*, that the son took a life estate only, with remainder to his children, or

issue, and not to his heirs generally, and that upon his death without issue, the devise in remainder failed, and the estate reverted to the heirs of the testator.''

In the case of *Cultice* v. *Mills*, 97 Ohio St., 112, the Supreme Court held:

''2. Where a testator devises real estate to a son during his natural life and to his heirs, and in other provisions of the will the word 'heirs' is used by the testator in the sense of 'children,' the word 'heirs' in the devise to the son should be held to mean 'children,' and not to have been used in its technical sense to designate any one capable of inheriting.

''3. In such a case the real estate, upon the death of the son without children, does not pass to his widow, but the devise in remainder fails and the real estate will revert to the son's brothers and sisters or their representatives as heirs of the testator.''

The three cited cases each involve a devise, and not a conveyance *inter vivos*, but in our opinion are as well applicable to a conveyance *inter vivos* in determining the effect of the failure of a remainder on the death of the life tenant. In all three cases the failure of the remainder effected by operation of law a reversion in the heirs of the testator. As applied to a conveyance *inter vivos* the reversion would initially be to the grantor. It is only by virtue of the fact that the devisor does not exist at the time when the reversion takes effect in possession which causes the property devised to pass on to the testator's heirs. There thus being a reversion created by the conveyance, possession under which is contingent upon the failure of the remainder estate, but which reversion is in the grantor until his (or her) death, it would appear that the same would pass to the grantor's heirs only if the grantor had *not* successfully conveyed same away during his lifetime or had *not* successfully devised same upon his death. This effect was so well established under the English common law it became a rule of law which made it impossible to create a remainder in the heirs of the grantor:

''Thus, if A, owning land in fee simple, conveyed to B for life or in fee tail, remainder to the heirs of A, the remainder was declared void, and A had a reversionary interest in fee simple. A like rule applied also to wills, so that, if a testator devised to an heir the precise interest in land which the latter would have

inherited in the absence of the provision in the will, the heir was regarded as acquiring the land by descent and not by purchase. * * *

"The significance of such a rule in the case of a conveyance is obvious; for, if the remainder to the heirs is void, the grantor may subsequently convey or devise the land to another, or the land may be taken by the grantor's creditors during his lifetime, and, in either event, the heirs would never take at all." Simes and Smith, The Law of Future Interests (2 ed.), Section 1601.

Although this was considered a rule of law, "the modern rule on the contrary, is generally regarded as merely a rule of construction so that, if the grantor sufficiently expresses his intention to create such a remainder (*i. e.*, in his heirs) the courts will give that intention effect." Section 1603, Simes and Smith, The Law of Future Interests (2 ed.). However, even as a rule of construction, and not of law, the modern rule will not apply to effect a reversion in the grantor unless the limitation is to the grantor's heirs as such, according to the statutes of descent and distribution, and a limitation to the heirs of the grantor to be determined as of a date other than the time of his death would fall outside the rule, since it would clearly appear that a class other than general heirs would be intended. Section 1606, Simes and Smith, The Law of Future Interests (2 ed.).

What effect does the modern rule of construction have on the title that plaintiff claims in the premises conveyed by the deeds herein? In the event that the "grantor's heirs at law" are to be determined as of the time of Ray Kohler's death the limitation to the heirs of the grantor would convey an estate to them but in such case Ray Kohler would not be an heir and plaintiff could not obtain title as his sole heir or devisee. In the event that the "grantor's heirs at law" are to be determined as of the death of the grantor, *i. e.*, the grantor's heirs as such, we would then be of the opinion that the modern rule of construction would be applicable to make void the limitation to the heirs of Minnie Kohler and would instead, as of the respective dates of the conveyances, create reversions in Minnie Kohler, which she could thereafter convey during her lifetime or dispose of by her will. No evidence has been offered to show that she did convey these reversions to anyone during her lifetime, and although it appears that she died testate the terms of her will

are likewise not in evidence in this case. It is a settled rule of construction that where a will is executed, making a disposition of property of the testator, a presumption arises that he intended thereby to dispose of his whole estate, unless the contrary appears. In the face of this presumption and with no evidence before us as to the terms of Minnie Kohler's will we cannot say that Ray Kohler could have succeeded or did succeed to Minnie's interest in such reversions.

Plaintiff has not established by a preponderance of the evidence her title to and right to possession of the premises herein involved on any theory, and judgment on plaintiff's petition must be for defendants. Defendants, Warren Ichler and Ruah Stevenson, have not prayed by cross-petition to quiet their title to said premises and this court does not enter judgment quieting their title thereto. Taking these views it is not necessary for this court to determine, nor does it determine, whether under the operative clauses of the deeds in question the "grantor's heirs at law" were to be determined as of the time of Minnie Kohler's death or, in the alternative, as of the time of Ray Kohler's death.

*Judgment accordingly.*

MIDDLETON and YOUNGER, JJ., concur.